**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**WESTCHESTER FIRE INSURANCE COMPANY, Defendant.**

Civ. A. No. 75–C–1112.

United States District Court,
D. Colorado.

Aug. 15, 1977.

Vincent W. King, Kirschenmann, King, Dawes & Ker, Durango, Colo., for plaintiff.

F. Michael Ludwig, Wood, Ris & Hames, Denver, Colo., for defendant.

## OPINION AND ORDER

### Preliminary Statement

CHILSON, Senior District Judge.

This diversity case is now before the Court on cross motions for summary judgment. The parties agree there is no genuine issue of material fact to be determined to dispose of the case on its merits. The parties, by stipulation, have submitted an agreed statement of facts which are the facts set forth in the pre-trial order under the heading of "uncontroverted facts"; the affidavit of E. Leroy Miracle attached as Exhibit A to plaintiff's memorandum brief in support of plaintiff's motion for summary judgment which was filed June 10, 1977; the exhibits listed by both parties in the pre-trial order; and additional facts set forth in the stipulation.

The pertinent facts so agreed upon are summarized in this Opinion.

### SUMMARY OF FACTS

Gerald Arnold, a wholesale petroleum distributor, obtained a general liability insurance policy from defendant, Westchester. The policy specifically excluded from coverage "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading" of Arnold's motor vehicles. Arnold filled this gap in his coverage by obtaining a policy from plaintiff, State Farm, covering liabilities "caused by an accident arising out of the ownership, maintenance or use, including loading or unloading" of his vehicles. Both companies agreed to defend any suit against Arnold which arose within the ambit of their respective policies. The relevant passage from the State Farm policy provides that the insurer will defend any suit claiming damages "which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent."

In June 1971, an employee of Arnold, Earl Miracle, was operating Arnold's truck in the course of making a delivery of petroleum products to one of Arnold's customers. The truck was covered by State Farm's policy. In the course of making the delivery, an oncoming car on the wrong side of the road forced Miracle to swerve sharply, resulting in several cans of gear lubricant (carried as cargo) spilling onto the roadway. Miracle made no effort to clean up the oil, but reloaded the cans and drove away. Some twenty to thirty minutes later a group of motorcyclists skidded on the oil and suffered various bodily injuries. The cyclists filed suit against Arnold based upon Miracle's negligence in failing to clean up the oil.

Demands were made upon both insurance companies to defend or settle the suit. Westchester declined to do so and denied that its policy covered the accident. Plaintiff thereupon agreed to undertake the defense, but notified defendant that plaintiff denied coverage and intended to sue defendant for expenses incurred in the de-

fense. Plaintiff expended approximately $7,000.00 for attorney's fees, court costs, witness fees, and other defense costs. A judgment against Arnold was compromised for an additional $34,000.00, which plaintiff paid. Plaintiff now seeks to recover the $41,000.00 from defendant.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that the cyclists' accident did not "arise out of" the use of Arnold's vehicle. Consequently, plaintiff contends it was under no obligation to defend or to compromise the suit and that defendant, on the other hand *was* under such a duty. By the terms of its insurance policy, plaintiff asserts that it is subrogated to Arnold's rights against defendant.

Defendant contends the accident did in fact arise out of the use of Arnold's vehicle and therefore was not within its coverage. Additionally, defendant raised three other defenses. First, that plaintiff's unreserved defense of the suit against Arnold and payment of the judgment prevented Arnold from having any rights against the defendant to which the plaintiff could be subrogated; second, that plaintiff's behavior operated as a waiver of whatever subrogation rights plaintiff might have had; and third, that even though defendant may be found liable to plaintiff, the cost of defending the motorcyclists' suit cannot be recovered.

Since the Court determines that State Farm's policy covered Arnold's liability for the accident and that Westchester's policy does not, we do not reach the additional defenses raised by the defendant, Westchester.

## CONCLUSIONS OF LAW

The basic question in this case is whether or not the cyclists' accidents did or did not "arise out of" the use of Arnold's vehicle.

The law of Colorado as established by the Colorado Supreme Court governs the determination of this question. We are of the opinion that the rules adopted and discussed by the Colorado Supreme Court in Justice Groves' opinion in *Titan Construction v.*

*Nolf,* 183 Colo. 188, 515 P.2d 1123 (1973) are dispositive of the question before the Court.

In *Titan,* the litigation involved a policy which provided that the insuror would pay on behalf of the insured, all sums which the insured would become legally obligated to pay because of bodily injury "caused by accident and arising out of use of any automobile." In discussing the obligations of the insuror, the Court stated in pertinent parts:

"It is to be noted initially that we are not dealing with tort rules of proximate cause. Rather we are here concerned with causation in the field of contracts. 'The question is not one in the field of torts of proximate cause of the accident, but one in the field of contracts of coverage under the wording of an insurance contract. While there must be a causal relationship between the insured use . . . and the accident, the question is not whether the insured truck was the cause of the accident.'" (183 Colo. at 194, 515 P.2d at 1126)

The Court went on to point out that there are two lines of authority, one called the "actual use" doctrine and the other a "but for" test of causation. The Court stated:

"We have concluded that the better rule in this situation should not be as limited as the 'actual use' doctrine, but rather that we should adopt the so-called 'but for' test of causation."

Applying the "but for" doctrine to the facts of this case, it is obvious that the accident would not have occurred "but for" the use of the insured truck to transport the petroleum products to the point on the highway where the spillage occurred and that there was a causal relationship between the use of the truck and the accident.

We further conclude that judgment of dismissal of this action should enter and the defendant should have judgment for its costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.